Curia, per

Butler, J.
It was conceded in argument that the paper in question, in this' case, if valid at all as a’ deed, must be so under the Statute of Uses, as a bargain and sale; for it was not pretended that it was good as a Common Law instrument, there never having been livery of seisin, or possession-under it. It must be judged of according to its literal purport *273 and what appears on the paper itself. It must be assumed that it was duly signed, sealed and delivered, and that it had one subscribing witness. And the question then arises, can a deed of bargain and sale be good and effectual for the conveyance of freehold, according to the law of South Carolina, without having at least two subscribing witnesses?
In 2 Comm. 307, Blackstone says, “the last requisite^ to the validity of a deed is the attestation, or execution of it, in the presence of witnesses; though this is necessary, rather for preserving the evidence than as constituting the essence of the deed.” From which it would seem, that according to the laws of England, subscribing witnesses are not essentially necessary to the validity of a deed. In the early and barbarous ages of the law, few could write or sign their names; and a deed derived its validity from the seal and the transmutation of possession from one to another. This was done usually in the presence of many witnesses, and with great form and ceremony. I doubt whether there ever was a deed, either at common law or under the statute of uses, that was not executed in the presence of witnesses. Livery of seisin seems to imply publicity and the presence of witnesses. I have examined many forms of deeds presented by conveyancers, and all of them, without exception, have a clause of attestation in the presence of at least two subscribing witnesses. Such has been the universality of the practice in this country, that all my brethren concur in saying that they never saw an effectual deed for the conveyance of land, (unless this be one,) which was not executed in the presence of subscribing witnesses. An instrument of this kind has been held good, as an agreement in writing, to authorize equity to direct a specific performance. ,
It is supposed that the deed which was held a good bargain and sale in the case of Rugg vs. Elles, (1 Bay R. 107,) was without subscribing witnesses. Such a conclusion is not justly inferable from the report of the case. The deed bore *274 date, l£)th August, 1785, and was said to have been executed in the presence of witnesses. The reporter does not undertake to give the entire deed literally, but says it.was “in substance, as follows.” There is neither seal nor witness to it, as copied; and }et it is certain there was a seal to the original, and probably witnesses. Whether witnesses were legally necessary, was not a question in the case; the question Was, whether, in character, it was a bargain and sale; and, if so, whether a bargain and sale was. effectual to carry land without livery of seisin; and it was determined that it was. But if it had been held that witnesses were unnecessary, then it would not. affect the question now before the court, as that decision was made before ’95.
I will now enquire what is a deed and bargain of sale, and gee whether, in its essential and distinctive characteristics, it is distinguishable from the form, of dee,d presented by the Act of’95. In the case of Rugg vs. Elles, the reporter says, at the conclusion of the opinion of the court, that since the decision of the case, which was in 1790, (the reporter publishing his work in 1809,) by an Act of the Legislature, a bargain and sale is declared to be a good deed to pass the fee, in all cases, without livery of seisin. T can find no other Act, and I believe ther.e is none, on the subject, except that of 1795, which presented tire form of deed now in use ; and that, the reporter regarded as nothing but a bargain and sale. And when examined and analyzed, it will be found to be nothing else ; or, at least, it includes a bargain and sale in it.
One of the species of conveyance introduced by the statute .of uses, which, as Blackstone says, is a kind of real contract, yvhereby the bargainor, for some pecuniary consideration, bargains and sells, that is, contracts to bargain and sell, the land to the bargainee, and becomes, by such a contract, trustee for apd seised to the use of the bargainee; and then the statute .pf uses completes the purchase. But, as it was foreseen that conveyances thus made would want the notoriety which the old. common law assurances were intended to give; to prevent^ *275 therefore, clandestine conveyances of freehold; it was enacted in the same session, by Stat. 27, Henry 8, c. 11, that such bargain and sale should not inure to pass a freehold, unless the same be made by indenture, and enrolled, within six months, in one of the courts of Westminster Hall, or with the cusios rotulo rum of the county. It is evident that this last statute, requiring enrolment, could not have been practically in force in South Carolina; as such deed could not-have been enrolled or recorded as therein required; and thd only deed of the kind, the one in the case of Ruggs vs. Elks,; noticed in our reports, was a deed poll, and not an in'dentdM-A bargain and sale must, therefore, have been regarded as good under the statute of uses. Such a mode of conveyance seéms not only to have received the sanction of the court,-but is recognized in several Acts of our Legislature, belore and after the revolution. In what is called.the quit-rent Act of 1731,-it is enumerated, among others; (3 Stat; So. Ca., 302, sec. 28;) also in the recording Act of 1789, (5 Stat So. Ca.; 127.) It must be regarded, now, as having the same validity as lease and release, and, it seems to me; for the very same reasons; for lease and release was, essentially, a bargain and sale under the statute of uses, and was introduced to evade the 27-Henry 8, requiring the enrolment; It is very certain that lease' and release was the usuftl conveyance of land in Sóulh Carolina, previous to ’95, notwithstanding other conveyances w'ere' regarded as legally valid. Some doubts must have been entertained as to a bargain and sale, strictly so called, or its simplicity would have recommended it to general use,- Éíhd would have obviated the necessity of the Act of 1795.
I have said that lease and release was but a complicated form of bargain and sale. Blackstone says, ‘-a lease, or rather bargain and sale, on some pecuniary consideration, for one yeas, is made by the tenant of the freehold to' the lessee or bargainee; now this, without any enrolment, makes the bargainor stand seised to the use of the bargainee, and vests in the bargainee the use of the term for a year, and- the statute? *276 immediately annexes the possession. He, therefore, being in possession, is capable of receiving a release of the freehold, or reversion.” Lease and release was supposed to have the advantage of feoffment, as there was supposed to be possession under it. Lease and release was effected by two deeds, one a bargain and sale, and the other a release, a sale by release. What has the Act of 1795 done, but reduce this mode of conveyance into one deed? There could not be a lease and release without a bargain and sale. This is the language of the Act of 1795: “Whereas, the mode of conveying land by lease and release, is expensive and inconvenient, &c.; be it enacted that the following form or purport of a release shall, to all intents and purposes, be valid and effectual to convey from one person to another, the fee simple of any land or real estate, if the same shall be executed in the presence of and subscribed by two or more credible witnesses.” The language of the form presented is, “have bargained, sold and released, and by these presents do bargain, sell and release.” What does it amount to, but bargain and sale and .release! It combines in it all the operative qualities of both; it includes in it bargain and sale; and to maintain that to write on a piece of paper “I, A B, do bargain and sell,” would be good ; but, when the word release is added, it would be bad, would be to say, the minor, which is included in the major, could be good, where the major, which includes the minor, would be bad. In other words, a bargain and sale, isolated and alone, would be good, but where included in a deed of release, would be bad. I think the proposition cannot stand the test of scrutiny. , The form prescribed by the Act, is a reduced form of bargain and sale, lease and release, and where any paper having these qualities, is intended to operate as a deed for the conveyance of freehold, it must have two subscribing witnesses. The paper before the court has but one, and cannot be supported as a deed. If such papers were allowed to operate as deeds, human vigilance could not guard against the mischiefs of clandestine and fraudulent conveyances. Courts *277 should never throw down the barriers of security, which the law has wisely and judiciously constructed for the protection of property.
The Act of the Legislature does say that the form prescribed should not invalidate the forms heretofore in use in this State; that is, all Common Law modes of conveyance which were attended with notoriety and transmutation of possession from one to another. All other forms are excluded by the one presented.
Upon the whole, we are dissatisfied with the decision below, and order the nonsuit to be set aside. [In Craig vs. Pinson ; but motion dismissed in Allston vs. Thompson.]
Johnson, Gantt, Evans, Johnston, Earle and Dunkin, JJ., concurred.